UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
POSR A. POSR,

|  | **MEMORANDUM** |
| Plaintiff, | **AND** |
|  | **ORDER** |

    - against -

96 CV 5200 (CLP)

NEW YORK STATE COURT OFFICER,
et al.,

                Defendants.
------------------------------------------------------X

        On October 23, 1996, plaintiff, Posr A. Posr, proceeding pro se, commenced this action,

pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, seeking a declaratory judgment and damages

based on claims of false arrest, malicious prosecution, conspiracy, as well as claims that

defendants violated his constitutional right of access to the courts and right to free speech.

        Defendants Court Officers Sergeant Robert Olinsky ("Olinsky") and Sean King ("King")

move for summary judgment, dismissing plaintiff's complaint in its entirety. Plaintiff has cross-

moved to amend his complaint to add a claim that defendants violated plaintiff's right to equal

protection under the Fourteenth Amendment. Plaintiff has also moved to compel defendants to

produce certain evidence for trial and for permission to depose several non-party witnesses prior

to trial.

FACTUAL AND PROCEDURAL
BACKGROUND

A. Factual Background

        Plaintiff filed his complaint on October 23, 1996, alleging that on May 2, 1996 at 9:00

a.m., he attempted to enter the courthouse located at 120 Schermerhorn Street in Brooklyn, which houses the Criminal Court for the City of New York, Kings County in Brooklyn. (Compl. ¶ 2; see also Defs.' 56.1 Stmnt ¶ 1). At the time, there were long lines of people waiting to clear the security scanners at the entrance. (Defs.' 56.1 Stmnt ¶ 1). According to plaintiff, there were approximately 150 people standing in line inside the courthouse lobby waiting to go through security. (Pl's. Dep. at 57-59). After waiting approximately twenty minutes, plaintiff reached the front of the line. (Id. at 60). By that time, there were numerous people standing in line behind plaintiff with more lined up outside the courthouse. (Id. at 59). According to defendant Olinsky,[1] a Court Officer employed by the New York Office of Court Administration, the courthouse is frequented by four to five thousand people every day. (Defs.' 56.1 Stmnt ¶ 4; Olinsky Dep. at 23).

On the morning of May 2, 1996, plaintiff, who is approximately six feet tall, was carrying a bicycle pump when he attempted to enter the courthouse. (Defs.' 56.1 Stmnt ¶ 5; Pl's. Dep. at 68-69). The pump, when not extended, is approximately 18 inches long and has an attached handle, hose and footstand. (Id. at 69-70; see also Defs.' 56.1 Stmnt ¶ 5). The plaintiff acknowledges seeing a sign in the lobby forbidding bulky items, but contends that his bike pump is not bulky. (Compl. ¶ 2; Pl's. Dep. at 68, 72-73).

Sgt. Olinsky refused to check plaintiff's pump at the courthouse entrance. (Defs.' 56.1 Stmnt ¶ 11). According to Officer King, there was a concern that the pump could be used a weapon. (Defs.' 56.1 Stmnt ¶ 6). Plaintiff acknowledges that after he had been standing in line

---

[1]Officer Olinsky is identified in the Complaint as "N.Y.S. Court Officer Shield # 207." (See Pl's. Dep. at 68 (identifying "Court Officer Shield Number 207" as "Sergeant Olinsky)).

for about ten minutes, Sgt. Olinsky told plaintiff "not impolite[ly]" that the pump would not be checked. (Pl's. Dep. at 72-74). Plaintiff also acknowledged in his deposition that this warning somewhat agitated him. (Id. at 85).

Plaintiff alleges that when he asked why his pump could not be secured, Sgt. Olinsky told plaintiff that it was within the officer's discretion. (Compl. ¶ 2; Pl's. Dep. at 75). When plaintiff noted that his bike pump had been checked previously, Sgt. Olinsky allegedly did not respond to plaintiff. (Pl's. Dep. at 79).

When plaintiff failed to remove the pump from the courthouse, Olinsky warned him again, asking him if he wanted to be arrested. (Id. at 79; cf. Olinsky Dep. at 23-24). Plaintiff did not heed the Officer's warning and instead waited in the line until he got to the front where it was made clear that the pump would not checked. (Defs.' 56.1 Stmnt ¶ 14; Pl's. Dep. at 79-80, 86-88). When plaintiff approached the metal detector, Sgt. Olinsky again informed plaintiff that the pump would not be secured and he instructed other Court Officers not to secure the pump. (Pl's. Dep. at 78). A verbal exchange[2] then ensued between plaintiff and the Court Officers. (Defs.' 56.1 Stmnt ¶ 15; Pl's. Dep. at 87-89). Plaintiff alleges that Sgt. Olinsky's actions were racially motivated. (Compl. ¶¶ 1(3), 3, 8, 9).

Sgt. Olinsky eventually told plaintiff that if he did not leave the building, he would be arrested. (Defs.' 56.1 Stmnt ¶ 13; see also Pl's. Dep. at 84). Plaintiff alleges that as he was moving toward the exit, he told Sgt. Olinsky, "'One day you're gonna get yours,'" to which Olinsky allegedly responded; "'yeah, but tonight I'm gonna sleep like a baby.'" (Compl. ¶ 4).

---

[2]Although the Court Officers testified that plaintiff's manner was threatening during this exchange (see Olinsky Dep. at 23-24; King Dep. at 73-74), plaintiff testified that he addressed the officers in measured tone. (Pl's. Dep. at 87).

At that point, defendant King, another Court Officer, identified in the Complaint as "N.Y.S. Officer Shield # 6385," placed plaintiff in handcuffs and told him he was under arrest for disorderly conduct. (Id. ¶ 7). Plaintiff was taken to another room off the lobby; his bag was searched, and he was issued an appearance ticket. (Id. ¶¶ 9-10). Officer King then escorted plaintiff out of the building with a warning that plaintiff would be arrested and additional charges would be levied against him if he tried to return that day. (Id. ¶ 10). Plaintiff claims that he was released after forty-five minutes of processing. (Pl's. Dep. at 97, 99).

Defendants contend that the incident seriously impeded the movement of pedestrian traffic through the courthouse. (Defs.' 56.1 Stmnt ¶ 16). Sgt. Olinsky testified that: "Traffic was piling up. . . . [P]eople started coming from the back portion of the lobby and just a lot of people began to gather. . . . [E]verything started getting backed up by both doors." (Olinsky Dep. at 20-21).

Defendants further contend that because the courthouse is located at 120 Schermerhorn Street, near various subways and bus stops, plaintiff could have elected to use public transportation or asked someone outside the courthouse to hold the pump for him. (Defs.' 56.1 Stmnt ¶¶ 7-8; Pl's. Dep. at 58). Indeed, a few weeks later, on June 14, 1996, plaintiff again attempted to enter the courthouse with the bicycle pump. (Defs.' 56.1 Stmnt ¶ 9). According to plaintiff, on this second occasion, a person at the school next door agreed to hold the pump for plaintiff while he was in the courthouse. (Pl's. Dep. at 93-94).

Plaintiff was arraigned before Judge Lila Gold on June 14, 1996. At that time, plaintiff argued that the court lacked jurisdiction because the accusatory instrument did not contain a description of the acts constituting disorderly conduct. The judge ruled, however, that the

4

charging instrument was sufficient. The case was set for trial on July 30, 1996. However, because the arresting officer was on "long-term sick" leave, the case was dismissed on speedy trial grounds.

B. Procedural Background

Following the filing of the Complaint in this action, defendants moved to dismiss all 42 causes of action alleged in the Complaint. By Memorandum and Order dated August 6, 1998, the district court granted defendants' motion and dismissed the plaintiff's claims for damages in their entirety, some on Eleventh Amendment grounds and the remainder for failure to state a claim upon which relief could be granted.

On appeal, the Second Circuit affirmed the dismissal of the suit against defendants in their official capacities, and affirmed the district court's dismissal of plaintiff's claimed violation of the right of access to the courts, and the claim of conspiracy to deny plaintiff his civil rights. See Posr v. Court Officer Shield No. 207, 180 F.3d 409, 412 (2d Cir. 1999). However, the Second Circuit remanded the case for further consideration of plaintiff's claims for false arrest, malicious prosecution and retaliation based on the exercise of plaintiff's First Amendment rights. The Court of Appeals also directed the district court to address plaintiff's claim for a declaratory judgment requiring state courts to check bicycle pumps. (Id. at 419).[3]

---

[3]On remand, the Second Circuit urged the district court to "exercise its best efforts to appoint counsel to represent" plaintiff if he so requests. Id. at 412. By Order of June 14, 1999, the district court ordered plaintiff to advise the magistrate judge within ten days if he sought appointment of counsel, and if so, the magistrate judge was directed to appoint counsel. The plaintiff did not respond to the Court's Order.

Following discovery, defendants moved for summary judgment on the remaining claims. Plaintiff also moved for rulings on certain outstanding discovery requests and for permission to file an amended complaint. The parties have consented to the undersigned for all purposes.

## SUMMARY JUDGMENT STANDARDS

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990) (quoting Fed. R. Civ. P. 56(c)). Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, see Egelston v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985), the court should not grant summary judgment unless it is clear that all of the elements have been satisfied. See Auletta v. Tully, 576 F. Supp. 191, 195 (N.D.N.Y. 1983), aff'd, 732 F.2d 142 (2d Cir. 1984). In addition, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

Once the moving party discharges its burden of proof under Rule 56(c) of the Federal Rules of Civil Procedure, the party opposing summary judgment "has the burden of coming forward with 'specific facts showing that there is a genuine issue for trial.'" Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858 (S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)). Rule

56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading. . . ." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 256. Indeed, "the mere existence of <u>some</u> alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. <u>Id.</u> at 247-48 (emphasis in original).

In reversing a grant of summary judgment, the Second Circuit noted that the "[t]rial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." <u>Quaratino v. Tiffany & Co.</u>, 71 F.3d 58, 65 (2d Cir. 1995) (quoting <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994)).

A. The False Arrest Claims

In order to state a valid claim under Section 1983, the "plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." <u>Dwares v. City of New York</u>, 985 F.2d 94, 98 (2d Cir.1993) (citing cases); <u>see</u> 42 U.S.C. § 1983; <u>Kalina v. Fletcher</u>, 522 U.S. 118, 123 (1997); <u>Gomez v. Toledo</u>, 446 U.S. 635, 638 (1980); <u>Imbler v. Pachtman</u>, 424 U.S. 409, 417 (1976); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 150 (1970). Claims of false arrest, false imprisonment and malicious prosecution in violation of the Fourth Amendment have been recognized as deprivations of rights cognizable in a Section 1983 action. <u>See</u> <u>Murphy v. Lynn</u>, 118 F.3d 938, 944 (2d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1115 (1998); <u>Singer v. Fulton County</u>

Sheriff, 63 F.3d 110, 116-17 (2d Cir. 1995), cert. denied, 517 U.S. 1189; Houston v. New York

City Transit Auth., No. 93 CV 1291, 1996 WL 173128, at *3 (E.D.N.Y. Apr. 10, 1996).

Moreover, an unreasonable "seizure" by a state actor in violation of the Fourth Amendment may

be pursued as a claim in a Section 1983 suit. See Brower v. County of Inyo, 489 U.S. 593, 596,

599 (1989); Murphy v. Lynn, 118 F.3d at 944. For purposes of evaluating a Section 1983 action

based on claims of false arrest and false imprisonment, courts in this circuit look to the elements

of a false arrest claim under state law.[4] Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992);

Labensky v. County of Nassau, 6 F. Supp. 2d 161, 176 (E.D.N.Y. 1998), aff'd, 173 F.3d 845

(1999); Dukes v. City of New York, 879 F. Supp. 335, 340 (S.D.N.Y. 1995).


1.  The Elements of a False Arrest Claim

      In order to establish a claim for false arrest under New York State law, plaintiff must

prove the following four elements:

> 1)  that defendant intended to confine plaintiff;
>
> 2)  that plaintiff was conscious of the confinement;
>
> 3)  that plaintiff did not consent to the confinement; and
>
> 4)  that the confinement was not otherwise privileged.

Singer v. Fulton County Sheriff, 63 F.3d at 118; Bernard v. United States, 25 F.3d 98, 102 (2d

Cir. 1994); Wright v. Naranjo, No. 94 CV 2461, 1996 WL 449276, at *3 (E.D.N.Y. Aug. 1,

---

[4] The torts of false arrest and false imprisonment are largely synonymous, 59 N.Y. Jur. 2d,
False Imprisonment § 1 (2005). "Every false arrest is itself a false imprisonment, with the
imprisonment commencing at the time of the arrest." Blanchfield v. State, 104 Misc. 2d 21, 24,
427 N.Y.S.2d 682, 685 (1980).

1996).

Applying these four criteria to the instant case, this Court finds that there is no dispute as to the first three elements of the claim. The defendant officers handcuffed and arrested plaintiff with the intent to confine him; plaintiff was clearly conscious of the fact of his arrest; and plaintiff protested rather than consented to the arrest.

As for the fourth element, courts have held that although "an arrest without a warrant is presumed unlawful," the defendant can establish a legal justification for the arrest, and thus defeat a constitutional claim for false arrest, by demonstrating that there was probable cause for the arrest. Dukes v. City of New York, 879 F. Supp. at 340. See also Pierson v. Ray, 386 U.S. 547, 557 (1967) (holding that in a Section 1983 action, where there is probable cause for a challenged arrest, a law enforcement officer cannot be found to have violated the arrestee's rights), overruled in part by Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982) (eliminating "good faith" element of defense); Zanghi v. Incorporated Village of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985) (holding that "[i]t is abundantly clear that a finding of probable cause will defeat state tort claims for false arrest, false imprisonment and malicious prosecution"); cf Broughton v. State of New York, 37 N.Y.2d 451, 458, 335 N.E.2d 310, 315, 373 N.Y.S.2d 87, 94 (holding that "[w]henever there has been an arrest and imprisonment without a warrant . . . the presumption arises that such an arrest and imprisonment are unlawful. . . . [However,] as an affirmative defense . . . [j]ustification may be established by showing that the arrest was based on probable cause"), cert. denied, 423 U.S. 929 (1975).[5]

---

[5]As the court in Houston v. New York City Transit Authority explained, the distinction between a claim for false arrest and a claim for malicious prosecution depends on the existence of a warrant. 1996 WL 173128, at *3. If the arrest is effected pursuant to a warrant, which is

Indeed, "probable cause serves as a complete defense to the charges of false arrest and malicious prosecution." Graebe v. Falcetta, 726 F. Supp. 36, 38 (E.D.N.Y. 1989), aff'd, 946 F.2d 883 (2d Cir. 1991). Thus, where, as here, the arrest was effected without a warrant, the focus of the court's analyses in determining whether the plaintiff has satisfied this fourth element in a claim for false arrest is on whether the arrest was based on probable cause. See Houston v. New York City Transit Auth., 1996 WL 173128, at *3-4; Niemann v. Whalen, 911 F. Supp. 656, 666 (S.D.N.Y. 1996); Augustine v. Reid, 882 F. Supp. 50, 52 (E.D.N.Y.), aff'd, 99 F.3d 402 (2d Cir. 1995); Dukes v. City of New York, 879 F. Supp. at 340. Probable cause exists where "the facts and circumstances within [the officer's] knowledge and of which [he or she] had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed [by the person to be arrested]." Dunaway v. New York, 442 U.S. 200, 209 n.9 (1979) (internal quotations omitted); see also Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991), cert. denied, 505 U.S. 1221 (1992); Dzinanka v. County of Suffolk, 932 F. Supp. 59, 62 (E.D.N.Y. 1996) (quoting Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir. 1989)).

In order to establish probable cause, there must be a "probability or a substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983); Labensky v. County of Nassau, 6 F. Supp.2d at 176. It is not necessary that the officers show evidence "'beyond a reasonable doubt'" as is the standard required for criminal

---

presumptively valid because generally there has been an judicial evaluation of probable cause prior to the issuance of the warrant, then the appropriate claim sounds in malicious prosecution. Id. at *3-4 (citing Cameron v. Fogarty, 806 F.2d 380, 386 (2d Cir. 1986), cert. denied, 481 U.S. 1016 (1987); Broughton v. State of New York, 37 N.Y.2d at 457-58).

conviction; "[n]or do police officers need to demonstrate that it is more probable than not [that] an offense has been committed to make a <u>prima facie</u> showing of criminal activity." <u>Miloslavsky v. AES Eng'g Soc'y, Inc.</u>, 808 F. Supp. 351, 354 (S.D.N.Y. 1992) (citing <u>United States v. Ginsberg</u>, 758 F.2d 823 (2d Cir. 1985)), <u>aff'd</u>, 993 F.2d 1534 (2d Cir.), <u>cert. denied</u>, 510 U.S. 817 (1993).

The existence of probable cause is a question for the jury where there is a dispute regarding the events leading to the arrest and where the question is factual in nature. <u>See, e.g.</u>, <u>Murphy v. Lynn</u>, 118 F.3d at 947; <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996); <u>Moore v. Comesanas</u>, 32 F.3d 670, 673 (2d Cir. 1994). <u>See also</u> <u>Collom v. Incorporated Village of Freeport, N.Y.</u>, 691 F. Supp. 637, 640 (E.D.N.Y. 1988) (noting that "where the evidence is conflicting such that reasonable persons might draw differing inferences, then the question of probable cause is ordinarily for the jury to decide") (citations omitted). While probable cause is to be determined based on the "totality of the circumstances," <u>Illinois v. Gates</u>, 462 U.S. at 230; <u>see also</u> <u>Bernard v. United States</u>, 25 F.3d at 102; <u>Calamia v. City of New York</u>, 879 F.2d at 1032, the fact that charges were dismissed does not mean that probable cause for the arrest did not exist. <u>See</u> <u>Warren v. Byrne</u>, 699 F.2d 95, 98 (2d Cir. 1983).

2. <u>Application</u>

Here, defendants contend that plaintiff was arrested for disorderly conduct. Under New York law, a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof: (1) he engages in fighting or in violent, tumultuous or threatening behavior; (2) he makes unreasonable noise; (3)

11

he uses abusive or obscene language or makes an obscene gesture in a public place; (4) he disturbs any lawful assembly or meeting of people without lawful authority; (5) he obstructs vehicular or pedestrian traffic; (6) he congregates with others in a public place and refuses to comply with a lawful police order to disperse; or (7) he creates a hazardous or physically offensive condition by an act with no legitimate purpose. New York Penal Law § 240.20.

In reversing the district court's dismissal of plaintiff's false arrest claim in this case, the Second Circuit noted that on the undeveloped record before the court at that time, it was impossible to determine which subsection of the disorderly conduct statute plaintiff was accused of violating. See Posr v. Court Officer Shield No. 207, 180 F.3d at 415. In the Complaint, plaintiff alleged that he did not raise his voice or use profanity during the incident, nor was there any indication in the Complaint that there had been a disruption of the flow of pedestrian traffic. As to the district court's characterization of plaintiff's comments to the officer as a "threat," the Second Circuit concluded that on a motion to dismiss under Rule 12(b)(6), the court could not construe plaintiff's speech as sufficient to justify an arrest for disorderly conduct because there may be "plausible interpretations . . . that do not constitute proscribable threats." Id. The court also stated, however, "[w]ere it reasonable for Officer King to believe that the plaintiff was illegally threatening Olinsky, there might well be probable cause to arrest him under subsection (1)" of the disorderly conduct statute. Id.

Defendants now contend that plaintiff was guilty of disorderly conduct under the section of the statute that prohibits the obstruction of pedestrian traffic. (Defs.' Mem. at 8-9 (citing N.Y. Penal Law ¶ 240.20(5))). Defendants have both testified that there was a large number of people in the courthouse that morning and that there was "a considerable and 'hazardous' interruption"

12

in pedestrian traffic as a result of the incident involving plaintiff. (Id. at 9). Sgt. Olinsky testified

at his deposition that in the area of the metal detectors, "[t]raffic was piling up . . . and just a lot

of people began to gather." (Olinsky Dep. at 20). He testified that "everything started getting

backed up by both doors," and "[p]eople started coming from the back portion of the lobby."

(Id.) In the area around the eight metal detectors, "the floor was getting impeded in this area,"

"while the situation [with plaintiff] was going on." (Id.)

He further explained that approximately ten feet from where he and plaintiff were

standing is a table where the officers hold people's property. (Id.) According to Sgt. Olinsky,

people were "steadily coming to that table." (Id.) He testified that "a lot of things were getting

backed up. The flow of traffic was being impeded." (Id. at 21). The officer further testified that

he "didn't feel it was justified to issue a summons to [plaintiff] in [his] initial discussions [with

plaintiff] although [plaintiff was] cursing and yelling and screaming." (Id. at 23). Originally,

Sgt. Olinsky just tried to get plaintiff to leave the building with the pump, but when plaintiff

"refus[ed] to comply with our requests to leave," "continu[ing] to yell and scream" while "[t]he

crowd gathered," Sgt. Olinsky testified that "[w]e had no recourse" but to arrest him and charge

him with a violation. (Id. at 24).

Officer King confirmed Sgt. Olinsky's testimony that at the time of arrest, plaintiff had

his back to the exit where there is a revolving door through which employees enter. (King Dep.

at 74). According to Officer King, plaintiff was pointing his finger and yelling at Sgt. Olinsky,

"and people could not get through the revolving door." (Id.) He testified that "everyone was

kind of looking at the situation[;] . . . people were just milling around in the maze," and "[t]raffic

was being stopped creating a hazardous situation." (Id.) Officer King testified that when he

13

moved closer to plaintiff, plaintiff told him, "you white f___g crackers are going to get yours some day." (Id.)

In response to defendants' motion to dismiss the false arrest claim, plaintiff argues that because there is a possibility that he was arrested for making "unreasonable noise" pursuant to Penal Law § 240.20(2) and not for obstructing pedestrian traffic under § 240.20(5), summary judgment should be denied. Plaintiff also disputes many of the facts set forth in defendants' 56.1 Statement.[6] He contends that regardless of the location of the courthouse, public transportation was not convenient for him. (Pl's. Mem. at 2).[7] He also states in his papers that "there were no [other] people" "in the exit area" at the time of the incident other than plaintiff and the defendant officers. (Id.) He further contends that his testimony contradicts that of the officers on the question of whether pedestrian traffic was in fact impeded. (Id. at 4-5).

Plaintiff concedes that when initially asked if traffic had stopped, he responded, "I was totally focused on him [Sgt. Olinsky], I really couldn't say." (Pl's. Dep. at 89). In his opposition papers, however, plaintiff now explains that he "did, in fact, not notice what happened with traffic because nothing happened with traffic because, other than the litigants, there were never any other people in the exit area for traffic to have stopped or started." (Pl's. Mem. at 4). He further explains that because everyone was trying to enter the building at 9:00 a.m. and not leave,

---

[6]Specifically, in his response to defendants' motion, plaintiff states that he disputes paragraphs 6, 7, 8, 12, 13, 14, 15, 16, 17, and 18 of Defendants' Rule 56.1 Statement (Pl's. Mem. at 2), even though a number of the statements are taken from plaintiff's own testimony. (See, e.g., Defs.' 56.1 Stmnt ¶¶ 8, 12, 14, 15, 17, and 18).

[7]Citations to "Pl's. Mem." refer to plaintiff's Notice/Affirmation in Opposition to Defendants' Motion for Summary Judgment and to Amend Plaintiff's Complaint, filed July 25, 2002.

counsel's question was misleading and did not eliminate the possible response that plaintiff now

provides. (Id. at 4-5). He cites a later passage in his deposition in which he stated:

> My sense was that people were aware of it [what plaintiff was
> doing] but they were so concerned about themselves getting
> through that everything was flowing. Things [were] still flowing.

(Pl's. Dep. at 95-96).

Defendants contend that even if plaintiff's testimony is considered, it does not directly

contradict the testimony provided by the court officers that "[t]raffic was piling up," and things

were getting "backed up by both doors" (Olinsky Dep. at 20), nor does it create a material issue

of fact sufficient to require a trial. To the contrary, plaintiff has not denied that his encounter

with the Court Officers had attracted the attention of other people attempting to enter the

building.[8] (See Pl's. Dep. at 95 (conceding that "people were aware of it," referring to plaintiff's

interaction with the officers)). Nor has he provided any evidence or even his own sworn

statement that the traffic was not backing up by the doors or by the metal detectors. (See Olinsky

Dep. at 20). The only testimony plaintiff offers to create an alleged factual dispute is his

statement that his "sense" was that "everything was flowing," along with his argument in his

responsive papers that because of the misleading nature of defendants' counsel's question, he

---

[8]Indeed, plaintiff testified that when he arrived at the courthouse that morning there were approximately 150 people in line in front of him, and that by the time he got to the front of the line, where the encounter with Sgt. Olinsky occurred, the waiting area behind plaintiff "was full," with approximately 150 more people in line behind plaintiff, and others outside the courthouse. (Pl's. Dep. at 57-60). Even if, as plaintiff claims, he was not cursing, yelling or screaming at the officers, at the very least, plaintiff's conduct in refusing to comply with the officer's orders, caused a disruption in the normal process, by diverting the attention of at least two Court Officers from their regularly assigned tasks to deal with the plaintiff, reducing the number of officers monitoring the metal detectors and thus, by necessity, impeding or slowing the progress of people through the courthouse entry.

was not given a chance to explain that he could not have blocked the exit because there was no one else in that area at the time.[9] (Pl's. Dep. at 95). Not only is this new explanation not provided in a sworn affidavit, but it directly contradicts plaintiff's own testimony at the time of his deposition that he "couldn't say" whether traffic had stopped or not because he was "totally focused" on the court officer. (Id. at 89). Neither these recent unsworn statements of plaintiff nor his testimony that he "really couldn't say" whether traffic had stopped or not because he was "totally focused" on the court officer (id.) are sufficient to create a material issue of fact as to the existence of probable cause for the arrest. Given that plaintiff has presented no factual evidence to contradict the testimony of the officers that plaintiff's conduct was obstructing pedestrian traffic in the vicinity of the courthouse entrance, the Court concludes that there has been no triable issue of fact raised relating to the existence of probable cause for the plaintiff's arrest.

Accordingly, defendants' motion to dismiss the false arrest claim is granted.


B. Qualified Immunity

Defendants contend that even if there is an issue of fact in dispute as probable cause, they are entitled to dismissal of the false arrest claims based on the defense of qualified immunity.

---

[9]This statement, which appears in Plaintiff's Memorandum of Law (at 4-5), is not supported by a sworn affidavit to that effect, nor does it appear anywhere in plaintiff's deposition testimony. Indeed, it appears to be directly contradicted by statements made in plaintiff's deposition testimony where he acknowledges that there were other people in the vicinity. Specifically, he testified that "[m]y sense was that people were aware of it [what plaintiff was doing] but they were so concerned about themselves getting through that everything was flowing." (Pl's. Dep. at 95-96). See discussion infra pp. 15-16.

1. The Elements of the Qualified Immunity Defense

It is well-established that police officers are afforded the defense of qualified immunity from suits for damages resulting from an incident arising from their official conduct. Anderson v. Creighton, 483 U.S. 635, 639-41 (1987); Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1996). The qualified immunity defense reflects an attempt by the courts to balance the competing interests of "a damages remedy to protect the rights of citizens" with "the need to protect officials who are required to exercise discretion and the related public interest in encouraging the vigorous exercise of official authority.'" Harlow v. Fitzgerald, 457 U.S. at 807 (quoting Butz v. Economou, 438 U.S. 478, 504-06 (1978)). Redefining the limits of qualified immunity in essentially objective terms, the court in Harlow v. Fitzgerald held that qualified immunity shields government actors from liability for damages when they are sued in their personal capacity, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818. See also Abdush-Shahid v. Coughlin, 933 F. Supp. 168, 184-85 (N.D.N.Y. 1996) (citing Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995)). Accordingly, if the law was clearly established, then an immunity defense will generally fail, "since a reasonably competent public official should know the law governing his conduct." Harlow v. Fitzgerald, 457 U.S. at 818-19. If the official can prove that he neither knew or should have known about the relevant legal standard, however, then the defense should succeed. Id. at 819.

Qualified immunity is an affirmative defense from suit and the burden rests on the defendants to establish that their conduct did not violate "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lee v. Sandberg, 136

F.3d 94, 101 (2d Cir. 1997) (citing Harlow v. Fitzgerald, 457 U.S. at 818). The application of the qualified immunity defense is a question of law to be decided by the court where the facts are not in dispute. Finnegan v. Fountain, 915 F.2d 817, 821 (2d Cir. 1990) (citing Warren v. Dwyer, 906 F.2d 70, 76 (2d Cir. 1990)).

The defense of qualified immunity is applicable to claims of false arrest, Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004); Codling v. City of New York, 68 Fed. Appx. 227, 228-29 (2d Cir. 2003); Lennon v. Miller, 66 F.3d at 423, even in the absence of probable cause, so long as the officer can show either that it was objectively reasonable for him to believe that probable cause existed or that reasonably competent officers could disagree on the existence of probable cause. See Escalera v. Lunn, 361 F.3d at 743; Codling v. City of New York, 68 Fed. Appx. at 230; cf Golino v. City of New Haven, 950 F.2d at 870 (discussing standard in context of malicious prosecution claim). Thus, to establish a qualified immunity defense, an officer must show "either that his conduct did not violate 'clearly established rights' of which a reasonable person would have known, or that it was 'objectively reasonable' to believe that his acts did not violate these clearly established rights." Finnegan v. Fountain, 915 F.2d at 823 (citing Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir. 1990); Calamia v. City of New York, 879 F.2d at 1035)). In conducting this inquiry, courts should examine the unique facts and circumstances of each case to determine whether "[t]he contours of the right . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . ." Id. (quoting Anderson v. Creighton, 483 U.S. at 640).

Three factors are relevant in determining whether a legal rule was "clearly established" at the time of the challenged action: (1) whether the right was defined with "reasonable

18

specificity;" (2) whether the decisional law of the Supreme Court and the Second Circuit

supports the existence of the right; and (3) whether, under preexisting law, a reasonable official

would have understood that his or her acts were unlawful. Warren v. Keane, 937 F. Supp. 301,

306 (S.D.N.Y. 1996) (citing Soares v. State of Conn., 8 F.3d 917, 922 (2d Cir. 1993)); see

also Rodriguez v. Phillips, 66 F.3d 470, 476 (2d Cir. 1995).

Since the right of an individual to be free from subjection to false arrest and excessive

force is well-established, see Calamia v. City of New York, 879 F.2d at 1036, the question then

becomes whether the officers' conduct here violated "clearly established rights" of which they

reasonably should have been aware, or whether it was "'objectively reasonable' to believe that

[their] acts did not violate these clearly established rights." Finnegan v. Fountain, 915 F.2d at

823 (internal quotations omitted). However, in order for the court to determine whether the

conduct of these officers was "objectively reasonable," the court must first determine what the

circumstances were and what actions the officers took in response. The inquiry "requires careful

attention to the facts and circumstances of each particular case, including the severity of the

crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

others, and whether [the plaintiff] is actively resisting arrest or attempting to evade arrest by

flight." Soares v. Conn., 8 F.3d at 921. In seeking to support a claim for qualified immunity, the

defendants must establish by a preponderance of the evidence that "'they did not know and

reasonably should not have known that their actions would constitute a violation of plaintiff's

constitutional rights.'" Garcia v. Senkowski, 919 F. Supp. 609, 616 (N.D.N.Y. 1996) (quoting

Redcross v. County of Rensselaer, 511 F. Supp. 364, 372 (N.D.N.Y. 1981)). Even though the

question of immunity is ordinarily one for the court to decide, "that is true only in those cases

19

where the facts concerning the availability of the defense are undisputed; otherwise, jury

consideration is normally required. . . ." Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994)

(gathering cases), cert. denied, 513 U.S. 1076 (1995). As the court in Lennon v. Miller noted:

> [A] defendant is entitled to summary judgment on
> qualified immunity grounds when "no reasonable
> jury, looking at the evidence in the light most
> favorable to, and drawing all inferences most
> favorable to, the plaintiff[,] could conclude that it
> was objectively unreasonable for the defendant[]" to
> believe that he was acting in a fashion that did not
> clearly violate an established federally protected
> right.

66 F.3d at 420 (quoting Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987)). Thus, while a

determination of whether defendants may claim qualified immunity is a legal issue that the court

may decide on a motion for summary judgment, this determination is still subject to the rules

governing motions for summary judgment. See Lloyde v. Lord, No. 94 CV 484, 1997 WL

123996, at *3 (S.D.N.Y. Mar. 19, 1997).

In the context of a claim of false arrest, the Second Circuit has stated that the officers

accused of false arrest are entitled to summary judgment on qualified immunity grounds if "'the

only conclusion a rational jury could reach is that reasonable officers would disagree about the

legality of the [arresting officer's] conduct under the circumstances.'" Lee v. Sandberg, 136 F.3d

at 102 (quoting Lennon v. Miller, 66 F.3d at 421).


2. Application

Turning to the facts at hand, it is clear that at the time of the incident, "[t]he right not to

20

be arrested without probable cause" was clearly established. <u>Id.</u> (citing <u>Cook v. Sheldon</u>, 41 F.3d 73, 78 (2d Cir. 1994)). Thus, the only issue is whether on the undisputed facts, "(a) it was objectively reasonable for the officer[s] to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." <u>Id.</u> (quoting <u>Golino v. City of New Haven</u>, 950 F.2d at 870; <u>Escalera v. Lunn</u>, 361 F.3d at 743; <u>Codling v. City of New York</u>, 68 Fed. Appx. at 230. Moreover, the motivation of the officers is irrelevant because the standard is not a subjective one, but rather is an objective determination based on what a reasonable officer in those circumstances would have believed. <u>See Lee v. Sandberg</u>, 136 F.3d at 103 n.5.

Given that the officers observed a disruption in the flow of traffic, noted that people were turning to observe the exchange with plaintiff, and that a "hazardous interruption" had occurred, defendants contend that their decision to arrest plaintiff for disorderly conduct was objectively reasonable under the circumstances, and therefore they are entitled to qualified immunity. (Defs.' Mem. at 8-9). In response, plaintiff contends that since he was moving toward the exit at the time, "[n]o reasonable court officer could fault plaintiff for complying with defendant Olinsky's order to leave." (Pl's. Mem. at 5).

However, plaintiff was not arrested for complying with or attempting to comply with Sgt. Olinsky's order to leave. He was arrested for disorderly conduct based on his disruption of the flow of pedestrian traffic. Based on the officers' testimony that traffic had slowed and a hazardous condition had been created, their decision to arrest plaintiff under the circumstances

21

cannot be said to be objectively unreasonable.[10]  Clearly, "arguable" probable cause existed to

arrest plaintiff at the time.  While other officers might have acted differently, possibly arresting

plaintiff at an earlier point in time or not arresting him at all, there was nonetheless arguable

probable cause to arrest him at any point after which the officers determined that his conduct was

impeding pedestrian traffic in the courthouse.

Accordingly, plaintiff's claims of false arrest are dismissed on grounds of qualified

immunity.

C.  Malicious Prosecution

Defendants contend that because the summons for plaintiff's prosecution was issued at

the time of his arrest, his claim for malicious prosecution must be dismissed as well.  Defendants

contend that not only is summary judgment warranted based on the existence of probable cause,

but the officers are again entitled to the defense of qualified immunity.

1.  Standards for Malicious Prosecution

Like the claim for false arrest, a claim for malicious prosecution under Section 1983 is

governed by the elements of the common law tort of malicious prosecution.  See Singer v. Fulton

County Sheriff, 63 F.3d at 116; Decker v. Campus, 981 F. Supp. 851, 860 (S.D.N.Y. 1997).

Under New York State law, a plaintiff seeking to pursue a claim of malicious prosecution must

_____

[10]For the reasons stated above in the false arrest section, plaintiff has not presented any
evidence to raise a triable issue of fact as to the circumstances confronting the officers and the
obstruction of pedestrian traffic as a result of plaintiff's conduct.  (See discussion supra at 14-
16).

prove: "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." Posr v. Court Officer Shield No. 207, 180 F.3d at 417 (citing Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997)); see also Russell v. Smith, 68 F.3d at 36; Collom v. Incorporated Village of Freeport, N.Y., 691 F. Supp. at 640.

With respect to the issue of probable cause, probable cause to prosecute has been defined under New York law as "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994) (internal quotation omitted); accord Decker v. Campus, 981 F. Supp. at 860. Although similar to the inquiry conducted with respect to a claim of false arrest, the determination of whether sufficient probable cause exists to defeat a claim of malicious prosecution must be made as of the time the accused was charged, arraigned, or indicted. See id.; see also Singer v. Fulton County Sheriff, 63 F.3d at 116-17.[11]

It is clear that any alleged constitutional violation must have been effectuated "pursuant to legal process." Singer v. Fulton County Sheriff, 63 F.3d at 116-17 (quoting Heck v. Humphrey, 512 U.S. 477 (1994)); Decker v. Campus, 981 F. Supp. at 860; Dzinanka v. County

---

[11]There is a rebuttable presumption of probable cause that arises from the grand jury's return of an indictment. See Murphy v. Lynn, 118 F.3d at 948. That presumption can be overcome by proof that the indictment was obtained through perjury, the suppression of evidence, fraud or other police misconduct. See, e.g., Marshall v. Sullivan, 105 F.3d 47, 54 (2d Cir. 1996); Colon v. City of N.Y., 60 N.Y.2d 78, 82-83, 468 N.Y.S.2d 453, 455-56, 455 N.E.2d 1248 (1983). Here, however, plaintiff's case was never presented to the grand jury. Instead, the charges were brought by way of a summons issued at the time of the arrest.

of Suffolk, 932 F. Supp. at 62. "A warrantless arrest made prior to arraignment does not constitute 'legal process,'" and accordingly, "the circumstances of the allegedly improper arrest . . . are of no consequence to the malicious prosecution claim." Id.; accord Decker v. Campus, 981 F. Supp. at 860 (noting that "legal process" takes the form of an arrest warrant or arraignment and that where there has been warrantless arrest, "process was not effected until plaintiff was arraigned," rendering the facts surrounding the unlawful arrest "irrelevant to the malicious prosecution claim").

It is clear, however, that the presence of probable cause for the arrest is also a complete defense to a claim of malicious prosecution, see Bernard v. United States, 25 F.3d 98, 104 (2d Cir. 1994) (citations omitted), unless the jury finds "that between the arrest[] and the prosecution the authorities became aware of evidence exonerating the accused." Collom v. Incorporated Village of Freeport, N.Y., 691 F. Supp. at 640. The burden is on the plaintiff to show that additional facts have come to light that negate an initial finding of probable cause. Dukes v. City of N.Y., 879 F. Supp. at 341-42. If there is a factual dispute as to the events that would determine probable cause, the issue must be determined by the trier of fact and is not appropriate for summary judgment. See Collom v. Incorporated Village of Freeport, N.Y., 691 F. Supp. at 640.

With respect to the second element, a plaintiff must show that the criminal proceeding terminated in his favor so as "to avoid parallel litigation as to questions of probable cause" and "to ensure against inconsistent judgments." Murphy v. Lynn, 118 F.3d at 948 (citations omitted). Where there is no adjudication of the merits of the charge resulting in an acquittal, the plaintiff must show that the final disposition of the charges is "indicative of innocence." Russell v.

24

<u>Smith</u>, 68 F.3d 33, 36 (2d Cir. 1995); <u>see also</u> <u>MacFawn v. Kresler</u>, 88 N.Y.2d 859, 860, 644

N.Y.S.2d 486, 666 N.E.2d 1359, 1359 (N.Y. 1996). "[T]he dispositive inquiry is whether the

failure to proceed 'impl[ies] a lack of reasonable grounds for the prosecution.'" <u>Murphy v. Lynn</u>,

118 F.3d at 948 (quoting <u>Loeb v. Teitelbaum</u>, 77 A.D.2d 92, 101, 432 N.Y.S.2d 487, 494 (2d

Dep't 1980)).

Here, the charges against plaintiff were dismissed as a result of the prosecution's failure

to comply with speedy trial requirements. On appeal, the Second Circuit in this case held that

under its analysis in <u>Murphy v. Lynn</u>, 118 F.3d 938, plaintiff had successfully established that his

termination on speedy trial grounds was in fact a "favorable termination" for purposes of the

malicious prosecution claim. <u>Posr v. Court Officer Shield No. 207</u>, 180 F.3d at 417-18.

However, the Second Circuit left open the issue of whether plaintiff could satisfy his burden of

proving the second element of the malicious prosecution claim – namely, whether defendants had

probable cause to believe the proceedings would succeed. <u>See</u> <u>id.</u> at 417.

Plaintiff contends that not only did the officers lack probable cause, but that there was no

evidence or facts set forth in the charging instrument such that the summons was facially

inadequate. The state court judge, however, ruled that the accusatory instrument was sufficient

under New York law to alert plaintiff to the nature of the charges against him. <u>See</u> <u>Posr v. Court</u>

<u>Officer Shield No. 207</u>, No. 96 CV 5200 (E.D.N.Y. Aug. 6, 1998), at 3.


2. <u>Application</u>

   (a) <u>Probable Cause</u>

   To the extent that plaintiff bases his malicious prosecution claim on an absence of

25

probable cause, this Court has previously found that there are no material issues of fact in dispute as to the existence of probable cause to arrest plaintiff based on his obstruction of pedestrian traffic at the courthouse. Since there has been nothing presented to the Court to suggest that following his arrest, evidence became available to exonerate plaintiff of the charge, the Court finds that plaintiff has not satisfied his burden of showing that defendants lacked probable cause to believe that the prosecution against him would not be successful. See Posr v. Court Officer Shield No. 207, 180 F.3d at 417.

To the extent that plaintiff bases his claim of malicious prosecution on the facial insufficiency of the charging instrument out of a lack of evidence or facts in the summons, that issue was previously decided by the state court, and plaintiff's challenge is barred not only by the Rooker-Feldman doctrine, but also by general principles of preclusion.

(b) *Rooker-Feldman* and Preclusion Doctrines

Although not addressed in the parties' papers, it is well-established under the Rooker-Feldman doctrine that federal district courts have no power to review directly or indirectly state court proceedings or to set aside decisions rendered by a state court. See D.C. Ct. of App. v. Feldman, 460 U.S. 462, 482-84 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923); see also Texaco Inc v. Pennzoil Co., 784 F.2d 1133, 1142 (2d Cir. 1986) (holding that "an inferior federal court established by Congress pursuant to Art. III, § 1[] of the Constitution may not act as an appellate tribunal for the purpose of overruling a state court judgment, even though the judgment may rest on an erroneous resolution of constitutional or federal law issues"), rev'd on other grounds, 481 U.S. 1 (1987).

26

The Supreme Court recently reexamined the Rooker-Feldman doctrine in Exxon Mobil Corporation v. Saudi Basic Industries Corporation, 125 S. Ct. 1517 (2005). In Exxon, the Court affirmed the established doctrine that where a judgment has been entered against a party in state court, and the party subsequently files a claim in federal court challenging that judgment, the federal court lacks subject-matter jurisdiction over the claim. Id. at 1526. "Rooker and Feldman exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate . . . ." Id. (citing 28 U.S.C. § 1257).

The Court clarified, however, that where a parallel federal claim has been filed prior to entry of judgment in the state proceeding, the federal court maintains concurrent subject matter jurisdiction over the claim, even after a state judgment is reached. Id. at 1526-27 (holding, "neither Rooker nor Feldman supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains sub judice in a federal court"). In that instance, the federal court must refrain from reviewing the state court judgment not for lack of subject-matter jurisdiction, but out of regard for the principles of claim and issue preclusion. Id. at 1527.

Examining the Court's recent discussion of the Rooker-Feldman doctrine, the Second Circuit has enumerated four elements that must be met for the doctrine to bar federal court review of a state court judgment: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must "'complain[ ] of injuries caused by [a] state-court judgment;'" (3) the plaintiff must "'invit[e] district court review and rejection of [that] judgment[ ];'" and (4) the state-court judgment must have been reached before the plaintiff commenced federal proceedings. Hoblock

27

v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 125 S. Ct. at 1521-22, 1524 n.2. Here, the first and fourth elements are clearly met. In holding that the charging instrument was sufficient, Judge Gold rejected plaintiff's claim that the summons was facially inadequate. (See Tr. dated June 14, 1996 at 2-4). This state court judgment was reached on June 14, 1996, well in advance of plaintiff's commencement of the instant action on October 23, 1996.

Concerning the second and third elements of the Rooker-Feldman test, the Second Circuit has explained that a plaintiff bringing a federal claim does not "run afoul of Rooker-Feldman" simply because his claim seeks a result opposed to the one he achieved in state court. Hoblock v. Albany County Bd. of Elections, 422 F.3d at 87. "[F]ederal plaintiffs are not subject to the Rooker-Feldman bar unless they *complain of an injury* caused by a state judgment." Id. (emphasis in original, internal quotations omitted).

In this action, plaintiff complains that Judge Gold erred in finding that the summons was sufficient to allow the prosecution to proceed against the plaintiff. The essence of plaintiff's federal claim is that this decision to allow the prosecution to proceed violated his constitutional right to be free from malicious prosecution. Had the state court instead ruled in plaintiff's favor and dismissed the criminal charges against him as lacking in probable cause, plaintiff would have no occasion to raise a Section 1983 claim of malicious prosecution. Since plaintiff here complains of an injury caused by the state court judgment itself and seeks its reversal, plaintiff's claim is barred by the Rooker-Feldman doctrine.

Plaintiff's claims are also barred by the preclusion principles of collateral estoppel and res judicata. See Coveal v. Consumer Home Mortgage, Inc., No. 04 CV 4755, 2005 WL 2708388, at

28

*4-6, *4 n.1 (E.D.N.Y. Oct. 21, 2005) (holding that claims were barred by Rooker-Feldman doctrine, and would also be barred by doctrines of collateral estoppel and res judicata). Collateral estoppel or issue preclusion bars a party from relitigating in a second proceeding an issue of fact or law litigated and decided in an earlier proceeding, "if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits." Metromedia Co. v. Fugazy, 983 F.2d 350, 365 (2d Cir. 1992), cert. denied, 508 U.S. 952 (1993), overruled on other grounds, Gustafson v. Alloyd Co., 513 U.S. 561 (1995); see also Allen v. McCurry, 449 U.S. 90, 94 (1980) (holding that "[u]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case"). As the court explained in Davis v. Halpern, 813 F.2d 37, 39 (2d Cir. 1987), collateral estoppel will bar a later claim if: 1) there has been a final determination on the merits of the issue; 2) the party against whom preclusion is sought had a "full and fair opportunity to contest the decision;" and 3) the issue to be precluded is the same as was previously decided by the prior court.

In deciding whether there has been a full and fair opportunity to litigate under New York law, courts consider, among other things, the forum and the extent of the prior proceeding, the size of the claim, and the availability of evidence that was not previously available at the time of the initial proceedings. Moccio v. N.Y. State Office of Court Admin., 95 F.3d 195, 202 (2d Cir. 1996), overruled on other grounds, Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 125 S. Ct. at 1521.

Here, it is undisputed that plaintiff, the party against whom preclusion is sought here, was a party to the prior criminal court proceeding; he, in fact, was the one who raised the issue of the inadequacy of the summons before the court. Moreover, there can be no dispute that the state court issued a final decision on the merits. Plaintiff's failure to appeal from that decision renders the decision "final" for purposes of claim and issue preclusion.

By claiming that the court erred in failing to dismiss the charges based on the alleged inadequacy of the charging instrument, plaintiff is seeking to have this Court review the proceedings that were conducted by Justice Gold. Consideration of this claim would clearly require this Court to review the decision of the state court, to reexamine and interpret the evidence presented to that court, and to analyze and review the bases for the court's decision – the very evaluations which this Court may not make. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 125 S. Ct. at 1526. That review is barred not only by the doctrine of collateral estoppel, but by the Rooker-Feldman doctrine as well.

D. Plaintiff's First Amendment Challenge

Plaintiff also asserted a claim in his Complaint that the officers retaliated against him for exercising his right to free speech. Under Section 1983, a plaintiff, in order to state a clam of retaliation, must show that his activity was protected by the First Amendment and that defendants acted in retaliation for that protected activity. See Posr v. Court Officer Shield No. 207, 180 F.3d at 418; Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994). In remanding this case for further proceedings, the Second Circuit determined that the district court had erred in dismissing plaintiff's claim for retaliation, concluding that if plaintiff had been arrested for

uttering the statement, "One day you're gonna get yours," then plaintiff must be permitted to

adduce evidence showing that comment to be protected speech under the First Amendment. Posr

v. Court Officer Shield No. 207, 180 F.3d at 418-19. The court further found that plaintiff's

complaint alleged a sufficient connection between the exercise of his free speech rights and the

arrest to withstand a motion to dismiss his retaliation claim. Id. at 419.

However, as discussed above, plaintiff was arrested under the subsection of the Penal

Law that prohibits disrupting pedestrian traffic, and not because he exercised his right to free

speech in criticizing the officers for their conduct. As defendants point out, even if the officers

were also motivated in part by plaintiff's statements to them, the fact that they had a proper

reason to arrest based on plaintiff's disruption in the courthouse during the busiest time of day

justifies the arrest. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287

(1977) (holding that if State action is based upon both proper motives and an improper motive to

retaliate, the action may be sustained if it would have been taken even in the absence of the

protected conduct), superceded by statute on other grounds, as stated in Rivera v. United States,

924 F.2d 948, 954 n.7 (9th Cir. 1991) (noting that defendant's burden of proof was by clear and

convincing evidence); Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994). Assuming for

purposes of this motion, that plaintiff can establish that his speech was protected and that there

was an improper motive behind his arrest, see id. at 535 (noting that under the analysis in Mt.

Healthy, plaintiff bears the burden of proving an improper reason and defendants have the burden

to show that they would have taken the action regardless), the burden shifts to defendants to

establish that defendants would have arrested plaintiff even in the absence of his protected

speech. Here, where the evidence demonstrates that plaintiff's conduct disrupted the flow of

31

traffic and created a hazardous situation, the Court finds that defendants have satisfied their burden on this issue.

Accordingly, defendants' motion for summary judgment on the retaliation claim is granted.


E.  Declaratory Judgment Claim

As part of his Complaint, plaintiff sought a declaratory judgment that his bicycle pump is a "non-bulky item" for purposes of the criminal court's policy of securing items at the entrance of the courthouse.  In remanding this claim for further proceedings, the Second Circuit noted that although the district court mentioned this claim in its August 6, 1998 Memorandum and Order, the court did not expressly consider the claim, leaving it unclear as to whether plaintiff's claim involved questions of federal law.  Posr v. Court Officer Shield No. 207, 180 F.3d at 419-20. The Second Circuit stated as follows:

> It is, therefore, possible that the district court considered this issue to be one of state law and simply declined to exercise supplemental jurisdiction over it.  Such a decision is, of course, entirely proper whenever the subject of the declaratory judgment is sufficiently separate from the federal questions raised in the underlying suit. But if the district court's failure to address this issue further simply reflected its choice not to take jurisdiction, the court's opinion should have so stated.

Id. at 419.  Although the Second Circuit declined to express an opinion on the request for declaratory relief, the Court of Appeals directed the district court to address these issues on remand.  Id. at 419-20.

Defendants now move for dismissal of the claim for declaratory relief on principles of comity.  (Defs.' Mem. at 16-17).  Citing Pennzoil Co. v. Texaco, 481 U.S. 1, 16 (1987),

32

defendants contend that the determination as to whether bicycle pumps should be allowed in state courthouses or be checked at the door for security purposes is a local law enforcement function. Defendants argue that the federal courts should refrain from "micro-managing" the discretionary decisions made by law enforcement officers concerning what items should be permitted in public places, particularly in the aftermath of September 11, 2001. (Defs.' Mem. at 16-17).

Principles of comity require the federal courts to show "'proper respect for state functions'" and to be "sensitiv[e] to the legitimate interests of both State and National Governments" so as to "not unduly interfere with the legitimate activities of the States." Pennzoil Co. v. Texas Co., Inc., 481 U.S. at 10 (citing Younger v. Harris, 401 U.S. 37, 44 (1971)); see Knox v. Salinas, 193 F.3d 123, 129-30 (2d Cir. 1999); Schwartz v. Dolan, 86 F.3d 315, 319 (2d Cir. 1996). The day-to-day discretionary determinations made by court officers responsible for ensuring the security of the state courthouse is the quintessential example of the type of decisions which should be left to state law and the officers tasked with enforcing those laws. It would constitute a serious violation of the principles of comity for this Court to be issuing edicts as to specific items that should or should not be checked at the courthouse door.

Moreover, there is a significant question as to whether this Court even has jurisdiction to issue a declaratory judgment that bicycle pumps are "non-bulky" items as that term is used in the announcement regulating items to be checked at the courthouse on 120 Schermerhorn Street. In Great Lakes Dredge & Dock v. Huffman, 319 U.S. 293, 300-01 (1943), the Supreme Court noted that federal courts, under long-settled principles of equity, have no authority to enforce a state official from performing an act permitted under state law unless it can be shown that there was no adequate remedy available in the state courts. The Court further made it clear that an action

for declaratory judgment was "essentially an equitable cause of action," subject to the application of equitable principles. Id. at 300. Thus, for the same reasons that the Court declined to enjoin the state actor, the Court in that case also declined to issue a declaration concerning the validity of the state act. Id. at 301-02.

The court in Samuels v. Mackell, 401 U.S. 66, 72 (1971), reaffirmed the holding in Great Lakes Dredge & Dock Co., noting that the principal issue to be decided, given the "deeply rooted and long-settled principles of equity [that] have narrowly restricted the scope for federal intervention," was whether "a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid." 401 U.S. at 72.

In this case, by asking for a declaration that bicycle pumps are non-bulky items, plaintiff is essentially requesting a ruling that would require the state court officers to store bicycle pumps. This is the equivalent of an injunction. Not only is it clear that federal courts are barred by the Eleventh Amendment from enjoining state officers from violating state law, see Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984); see also Farid v. Smith, 850 F. 2d 917, 922-23 (2d Cir. 1988), but plaintiff has failed to demonstrate that he has no available recourse in state court to challenge the officers' decision as to the "bulkiness" of a bicycle pump.

For these reasons, this Court finds that there is no jurisdiction to review this claim, and even if there were, the Court would decline to exercise such jurisdiction under principles of comity. Accordingly, the claim for declaratory judgment is dismissed.

34

PLAINTIFF'S MOTION TO AMEND

Plaintiff moves to amend his Complaint in several respects. He seeks to drop the state and federal claims against defendant Olinsky for retaliation, to drop all the claims dismissed by the Second Circuit, and to add claims that he was denied his right to equal protection. He further seeks to have the new claims relate back to the filing of the initial Complaint.

Defendants oppose the motion insofar as plaintiff seeks to add a claimed violation of his Fourteenth Amendment right to equal protection, arguing that such an amendment would be futile.


A. <u>Standards</u>

As a general matter, Rule 15(a) of the Federal Rules of Civil Procedure provides that an amendment as of right may be made at any time prior to the service of a responsive pleading. Once a response to a complaint has been filed, a plaintiff may amend the complaint "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). However, the Rule also states that "leave shall be freely given when justice so requires," <u>id.</u>, and the Rule has been liberally construed. <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). As the court in <u>Chapman v. YMCA of Greater Buffalo</u> noted, "The stated purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim." 161 F.R.D. 21, 24 (W.D.N.Y. 1995).

Although leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), the decision whether to grant a plaintiff's motion to file an amended pleading remains within the court's discretion, <u>see</u> <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995),

and an amendment should not be allowed where there has been bad faith or dilatory motives or where the amendment would be futile or would cause undue delay or undue prejudice to the opposing party. See Foman v. Davis, 371 U.S. at 182; Zahra v. Town of Southold, 48 F.3d at 685; John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994); Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1198-99 (2d Cir. 1989). "The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y. 1994) (citing Panzella v. Skou, 471 F. Supp. 303, 305 (S.D.N.Y. 1979)). "'Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.'" Block v. First Blood Assocs., 988 F.2d at 350 (quoting State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)).

Among the factors the court must consider in granting discretionary leave to amend is whether the amendment would be futile because it fails to state a claim. See Chapman v. YMCA of Greater Buffalo, 161 F.R.D. at 23-24. When a proposed amendment is objected to on the ground of legal insufficiency, the court should apply the same test that is used to evaluate a pleading challenged under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See id. at 23. Thus, this Court must accept all well-pleaded allegations in the complaint as true and construe the complaint liberally in the light most favorable to the plaintiffs. See Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert denied, 513 U.S. 836 (1994); 5A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1357 (3d ed. 2004). If there is no set of facts that, if proved, would constitute a valid and sufficient claim as amended, the court should deny leave to amend. See Chapman v. YMCA of Greater Buffalo, 161 F.R.D. at 23.

B.  Application

Plaintiff's equal protection claim, as set forth in his proposed amended complaint, seems

to be that by refusing to check plaintiff's pump, Sgt. Olinsky "without fair, solid, and substantial

cause," "den[ied] plaintiff services all other non-bulky item holders were offered. . . ." (Pl's.

Proposed Am. Compl. at 11). He seeks compensatory and punitive damages for Sgt. Olinsky's

conduct in violation of the Fourteenth Amendment's "prohibition on the arbitrary and capricious

exercise of state authority over its citizens."[12] (Id. at 12).

The Equal Protection Clause directs state actors to treat those who are similarly situated

in a like manner.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Thus,

to prove a violation of equal protection, plaintiff must prove "purposeful discrimination . . .

directed at an identifiable or suspect class." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir.

1995) (internal citations omitted).  In FSK Drug Corp. v. Perales, 960 F.2d 6, 10 (2d Cir. 1992),

the Second Circuit held that an equal protection violation based on a facially valid state law lies

when (1) the person was treated differently from other similarly situated individuals, and (2) the

selective treatment was motivated by an intent to discriminate based on impermissible

considerations, including race, by an intent to punish or inhibit the exercise of constitutional

rights, or by a malicious or bad faith intent to injure the person.  See also Quinn v. Nassau

County Police Dep't, 53 F. Supp. 2d 347, 355 (E.D.N.Y. 1999).  Thus, the Equal Protection

Clause has been held to prohibit "'arbitrary and irrational discrimination' even if no suspect class

or fundamental right is implicated." Muller v. Costello, 187 F.3d 298, 309 (2d Cir. 1999).

---

[12]In addition to asserting a cause of action under the Fourteenth Amendment, plaintiff
also alleges violations of federal and state statutes prohibiting violations of equal protection.

In this case, even construing the proposed complaint in the light most favorable to the plaintiff, plaintiff has failed to allege facts sufficient to demonstrate discrimination directed at an "identifiable or suspect class." Giano v. Senkowski, 54 F.3d at 1057. Holders of "bulky" items are not an identifiable class of people for whom special protection is normally provided. Nor has plaintiff alleged facts indicating that he was subject to discrimination based on his membership in a suspect class. Indeed, the Second Circuit dismissed the claims of race discrimination alleged in plaintiff's original complaint, finding that plaintiff had not alleged "facts sufficient to support a conclusion of race-based animus." Posr v. Court Officer Shield 207, 180 F.3d at 419. He has alleged nothing new in this proposed Amended Complaint to further support a claim of race-based discriminatory treatment by the defendants.

As to the potential claim that these officers acted arbitrarily, with malice or bad faith intent to cause injury to him, plaintiff has not alleged facts sufficient to sustain such a claim; he has not even pleaded the first element of the claim -- that he was treated differently from similarly situated people. Although he alleges that he had been previously allowed to check his bicycle pump, he does not allege anywhere in his complaint that others with bicycle pumps or similar articles that could be used as weapons were allowed to bring such items into the courthouse and/or check them.

In the absence of any facts to sustain these allegations of equal protection violations, the Court finds that to allow plaintiff to amend at this time to add these claims would be futile, since in the facts alleged in the proposed amended complaint, he has failed to state a claim for which relief could be granted.

Accordingly plaintiff's motion to amend is denied.

## PLAINTIFF'S DISCOVERY REQUESTS

Plaintiff has filed a motion seeking additional discovery. Specifically, he seeks permission to depose: (1) Honorable Lila Gold; (2) eleven arresting officers; (3) defendant King's treating physician, Dr. A. Moazenzadeh; and (4) Alice Walker. (See Plaintiff's Reply to Defendant's Motion Opposing Deposition/Other Items, dated August 20, 2002 ("Pl's. Reply") at 1). He also seeks various orders directing the production of certain evidence for use at trial.[13]

With respect to the deposition of Judge Gold, plaintiff argues that because the charging instrument did not specify facts on which jurisdiction would be proper, the arrest was false as a matter of law. (Letter of Posr Posr, dated February 2, 2000 at 2). Plaintiff contends that Judge Gold was biased against plaintiff due to his pro se status and that by refusing to permit plaintiff to review the charging instrument, she effectively prevented plaintiff from challenging the adequacy of the accusatory instrument. (Id.) Plaintiff asserts, "Judge Gold, whose bias and hostility against Pro Se attorneys is reflected in the transcript of June 14, 1996, became so enraged that she pushed a factless, insufficient instrument in an effort to punish a Pro Se litigant for daring to defend himself without having spent thousands of dollars to go to law school. Judge Gold was jealous and envious." (Id. at 1). Accordingly, plaintiff argues that Judge Gold's testimony is necessary to prove that the prosecution failed to establish jurisdiction and therefore his arrest was facially invalid. (Id. at 2).

As set forth supra, this Court finds that plaintiff is precluded from relitigating this issue under principles of collateral estoppel and the Rooker-Feldman doctrine. As such, this Court

---

[13]Given the Court's decision that defendants' motion for summary judgment should be granted, these requests for evidence to be used at trial are moot.

finds that Justice Gold's deposition would not lead to the discovery of admissible evidence. To the extent that plaintiff wishes to question her about the denial of his motion to dismiss based on the facial invalidity of the summons, Judge Gold explained her ruling on the record. The court explained: "The reason that makes it sufficient, it has the section of the law, it has the affirmation of the police officer which alerts you and informs you as to the nature of the charges against you." (Tr. dated June 14, 1996 at 3-4). Plaintiff's recourse, if he was dissatisfied with this ruling, was to file an appeal. It is not within this Court's purview to review the findings or pass upon the wisdom of the criminal court judge. See discussion supra pp. 24-28. To the extent plaintiff argues that there was insufficient probable cause stated for his arrest and prosecution, that issue has been addressed supra, pp. 11-15, 19-21, and plaintiff has failed to set forth a basis on which to find that a deposition of Judge Gold would shed new or contradictory light on this issue. Accordingly, his request is denied.

Plaintiff also seeks to depose eleven court officers who defendants claimed would testify on deposition as to plaintiff's behavior on other occasions during a two-year period following the arrest at issue in this action. (See Pl's. Reply at 1; Letter of Lee Alan Alderstein, Esq., dated January 2, 2002 ("Defs.' Letter") at 4-5). Plaintiff's request to depose these officers arises in response to a letter dated January 2, 2002, in which defendants sought a ruling that they be permitted to elicit evidence, specifically on cross-examination of plaintiff, that plaintiff had been involved in numerous confrontations with various law enforcement officers, as well as prior lawsuits. (Defs.' Letter at 4-5). Defendants sought to admit this evidence under Rules 404(b) and 406 of the Federal Rules of Evidence. (Id. at 5-7). They contend that in response to plaintiff's portrayal of his conduct as a "spontaneous and non-obstructive challenge" to the court

officers' refusal to check his pump, defendants would establish plaintiff's motive and intent to obstruct and his habit in doing so on these other occasions. (Id. at 6). According to defendants, these other eleven officers warned plaintiff not to bring cameras into the courthouse, not to film in court, not to disobey a judge's order against offering argument on videotaping proceedings in court, and not to sit in the front row of the courtroom which is generally reserved for parties. (Id. at 5; see also Pl's. Dep. at 18-21, 23-28, 38-39). Defendants argue that these witnesses would establish that plaintiff's actions on May 2, 1996 were designed to incite defendant King to arrest plaintiff. (Defs.' Letter at 6).

Plaintiff also seeks to call Dr. Moazenzadeh, who was defendant King's treating physician and who, according to defendants, directed defendant King not to travel, effectively preventing him from appearing on the morning of plaintiff's criminal trial. (See Pl's. Reply at 3-4). Indeed, on July 31, 1996, a day after the criminal trial was scheduled to begin but did not proceed due to King's absence, plaintiff asserts that King had the stitches in his knee removed, demonstrating his ability to travel to court. Plaintiff contends that he needs the doctor's testimony to show that Officer King could have appeared for the trial and that he "improperly avoided testifying for the purpose of avoiding testimony about defendant King's false arrest. . . ." (Pl's. Reply at 4).

Plaintiff also seeks to depose Alice Walker, the female officer who was seated at the table in the courthouse, checking items at the time of the incident. Plaintiff seeks her deposition to confirm his testimony that her "facial expressions . . . express[ed] bewilderment, a lack of agreement, and a lack of understanding that defendant Sgt. Olinsky was denying the checking of the bike pump." (Id. at 5).

41

As to plaintiff's requests for the depositions of the eleven court officers, Alice Walker, and Dr. Moazenzadeh, given this Court's ruling on the motion for summary judgment, their testimony is unnecessary. Even if the case were to proceed, however, Ms. Walker's facial expressions and Officer King's physical condition on the date of trial would not be relevant to alter the summary judgment calculus. Accordingly, plaintiff's request to depose these individuals is denied.

Plaintiff has also filed a challenge to the accuracy of the transcription of the court proceedings on June 14, 1996. (See Notice of Plaintiff's Challenge to Transcript, filed August 23, 2002). At the proceedings before the court on June 14, 1996, Judge Gold denied plaintiff's pro se motion to dismiss based on the facial insufficiency of the summons. Plaintiff alleges that during the proceeding, he used the term "facts of an evidentiary nature" that does not appear in the transcript. He also claims:

> During the proceeding on 1996 June 14 plaintiff asked Judge Lila Gold who said that summonses don't have to have facts. Judge Gold replied: ["]Do you mean do I have a case?["] Plaintiff responded "Yes." Judge Gold said: "No [you] don't have a case." That exchange does not appear on the transcription.

(Id. at 1). He also claims that his question to Judge Gold, "What is it the officer is saying I did?" also does not appear in the transcript.[14] (Id.)

_____

[14]Plaintiff has also filed a separate motion requiring the defendants to have separate counsel, and raising a potential conflict of interest based on Sgt. Olinsky's statement that they are trained to be "thick skinned," which plaintiff contrasts with King's claim that the arrest was valid. Plaintiff's concern stems from a fear that if he is successful at trial, Officer King will be able to appeal the decision based on the decision in United States v. Schwarz, 283 F.3d 76 (2d Cir. 2002). This situation is distinguishable from the Schwarz case, and having considered the various defenses raised, this Court concludes that no conflict exists that would require separate counsel at this time.

With respect to his motion to correct the transcript of the proceedings before the criminal court, that motion is not properly before this Court. Rather, such a motion would have to be made before the court in which the proceedings occurred. Moreover, it is not clear why these alleged errors, even if true, are material to the issues in this action. Accordingly, the request to amend or correct the transcript is denied without prejudice to plaintiff making such an application before the appropriate court.

The Clerk is directed to send copies of this Memorandum and Order to the parties either electronically through the ECF system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
March 13, 2006

Cheryl L. Pollak
United States Magistrate Judge

43